**Chester Porter MOSS and James Hargrove, Plaintiffs,**

v.

**CRAWFORD & COMPANY, a corporation, Defendant.**

No. 98–1350, 212.

United States District Court, W.D. Pennsylvania.

Sept. 21, 2000.

Joseph E. Fieschko, Jr., Pittsburgh, PA, John R. Linkosky, Carnegie, PA, for plaintiffs.

Robert H. Buckler, Robert C. Stevens, Benjamin D. Briggs, Tangla L. Fudge, Dena H. Sokolow, Robert D. Howell, Troutman Sanders, Judd F. Osten, Crawford & Company, Atlanta, GA, Richard L. Rosenzweig, Gaca, Matis, Baum & Rizza, Pittsburgh, PA, for defendant.

## OPINION

CAIAZZA, United States Magistrate Judge.

Currently before the court is the Motion to Decertify Class filed by the defendant Crawford & Company (Crawford) at document number two hundred and twelve. Before proceeding into the substance of Crawford's motion, the court will briefly review the convoluted history of this lawsuit.

### A. Procedural History

On August 12, 1998, Plaintiff Chester Porter Moss initiated this lawsuit under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 201 *et seq.*, to recover unpaid overtime compensation from Crawford for his work during the clean-up of the Ashland oil spill and Exxon Valdez oil spill. (Doc. No. 1.) His Complaint did not demand a jury trial. (*Id.*) Moss also filed a Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 on November 9, 1998. (Doc. No. 3.) On December 9, 1998, United States District Court Judge Donald J. Lee denied the plaintiff's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. (Doc. No. 11.) On December 17, 1998, Judge Lee consolidated the lawsuit filed by James Hargrove (Hargrove) at 98–CV–1610 with Moss' lawsuit and designated civil action number 98–1350 as the lead case for both plaintiffs. (Doc. No. 16.) The parties consented to a trial before a Magistrate Judge on January 5, 1999. (Doc. No. 20.)

On February 3, 1999, the plaintiffs filed a Motion to Permit and Facilitate Notice of Pending Class Action under 29 U.S.C.A. § 216(b). (Doc. No. 23.) On May 5, 1999, the court originally denied the plaintiffs' motion for class certification under § 216(b) because they failed to establish the factors outlined by the United States Court of Appeals for the Third Circuit (Third Circuit) in *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 51 (3d Cir.1989), *overruled in part on other grounds by Hazen Paper Co. v. Biggins*, 507

U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). (Doc. No. 63.)

On September 14, 1999, the court resolved the statute of limitations and exemption issues raised in the plaintiffs' Motion for Partial Summary Judgment filed at document number twenty-six and in Crawford's Motion for Summary Judgment filed at document number twenty-nine. Judge Lee's Findings of Fact and Conclusions of Law in a related case, *Sonnier v. Crawford & Company*, Civ. A. No. 94–1755, *aff'd* No. 97–3096 (3d Cir. October 29, 1997), *cert. denied* 523 U.S. 1107, 118 S.Ct. 1676, 140 L.Ed.2d 814 (1998), were relevant to the resolution of both issues. Significantly, in *Sonnier*, Judge Lee concluded that Crawford's failure to post the required FLSA notices in its Exxon Valdez and Ashland oil spill offices tolled the running of the statute of limitations. On appeal, the Third Circuit affirmed Judge Lee's conclusion by specifically noting that Crawford had not produced any audit records to verify the posting of any FLSA notices. Consequently, the court applied Judge Lee's conclusions to this lawsuit through non-mutual offensive collateral estoppel and determined that Moss and Hargrove's FLSA claims were not barred by the two year statute of limitations set forth in 29 U.S.C.A. § 255(a). (Doc. No. 71.) The court also denied the parties' respective motions on the administrative exemption issue because there were outstanding factual issues with respect to the plaintiffs' duties and responsibilities. (*Id.*)

Upon Crawford's Motion for Reconsideration, the court clarified its ruling on the statute of limitations issue. (Doc. No. 75 and 92.) Because Judge Lee's conclusions were limited to pre-September 1993 events, the court permitted Crawford to raise the statute of limitations defense with respect to circumstances that occurred after September 1993. (Doc. No. 92.) The court also allowed Crawford to inquire into the plaintiffs' personal knowledge of their FLSA rights because *Sonnier's* conclusions of law did not address that issue. (Doc. No. 92.)

On October 28, 1999, Moss and Hargrove filed a Motion to Certify under 29 U.S.C.A. § 216(b). (Doc. No. 86.) After reviewing the affidavits filed with the motion, the court preliminarily certified an opt-in class of monitors, adjusters and invoice reviewers who were not compensated with overtime wages for their work in the Exxon Valdez and Ashland oil spills. (Doc. No. 94.) Again, Crawford challenged the court's ruling through another Motion for Reconsideration. (Doc. No. 99.) In a Memorandum Order filed on December 30, 1999, the court explained that the court made a conditional certification pursuant to the two step analysis established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987) *mandamus granted in part, appeal dismissed, Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir.1988), *vacated in part, modified in part, and remanded, Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J.1988), *aff'd in part, appeal dismissed, Lusardi v. Xerox Corp.*, 975 F.2d 964 (3d Cir.1992), and that Crawford would have the opportunity to file a motion to· decertify the class after the parties had completed discovery. (Doc. No. 108.)

The parties bickered over the language of the notification letter, and after the court intervened, an appropriate notice was sent to prospective members class. Seventy-four individuals filed opt-in consent forms with the court. After deposing twenty-four class members, Crawford filed its Motion to Decertify on April 5, 2000. In this motion the defendant argues that this lawsuit can not proceed as a collective action because: (1) the plaintiffs' job duties and pay provisions differ; (2) Hargrove's separate claims undermine the purpose of a collective action; and (3) the exemption and statute of limitations defense precludes resolution of the plaintiffs' claims on a class wide basis. (*See* Doc. No. 212.)

### B. Facts

Crawford's primary business is insurance adjustment and risk management. (Def.'s Br. in Supp. of Mot. to Decertify Class at 4.) Its Catastrophe Division (CAT) responds to natural and man-made disasters by assisting insurance companies with liability claims and clean-up programs. (*Id.*) Crawford's main office is in Atlanta, Georgia and it maintains temporary offices at each catastrophe site. (*Id.*)

The defendant classifies its CAT employees as either core members or non-core employees. (*Id.* at 5.) Both core members and non-core employees work at catastrophe sites on short and long term assignments and may perform their work at a variety of locations including branch and temporary offices, insurance company offices, law firms, hotel rooms and leased facilities. (*Id.*) Core members are permanent employees who receive health and pension benefits. (*Id.*) They also receive a draw against their future earnings when they are not employed on a CAT project. (*Id.*) Before September 1993, core members received a monthly draw of $200.00. (Pl.'s Resp. to Def.'s Mot. to Decertify Class, Doc. No. 225, at 4; *See also Sonnier v. Crawford & Company,* Civ. A. No. 94–1755 (W.D Pa. Jan. 28, 1997))[1]. In September 1993, Crawford began to guarantee core members a payment of $250.00 per week if they earned less than that amount on a project. (*See Edmund v. Crawford & Company,* Civ. A. No. 1:95–CV–1310–JOF (N.D. GA Atlanta Div. March 31, 1997)). In contrast, Crawford assigns non-core employees to projects on an "as needed" basis and does not provide them with benefits or a draw. (Def.'s Br. in Supp. of Mot. to Decertify Class at 5.)

The name and opt-in members each worked for Crawford as CAT adjusters on the Ashland and the Exxon Valdez projects. The Ashland oil spill occurred in January 1988 on the Monongahela River near Pittsburgh, Pennsylvania. (*Id.* at 5—6.) Crawford's involvement with the Ashland clean-up ended in 1991, (*Id.* at 6), and it first sent CAT adjusters to assist with the Exxon Valdez oil spill in early 1989. (*Id.*) Although some CAT adjusters performed work outside of Alaska through 1993, Crawford's primary involvement with the Exxon Valdez project closed in 1991. (*Id.*)

Crawford paid its CAT employees a commission that was based upon the amount billed to the client. (*Id.* at 14; *see also Sonnier v. Crawford & Company,* Civ. A. No. 94–1755 (W.D Pa. Jan. 28, 1997) and *Edmund v. Crawford & Company,* Civ. A. No. 1:95–CV–1310–JOF (N.D. GA Atlanta Div. March 31, 1997)). It billed its clients in the Ashland and Exxon Valdez projects at different rates for each hour worked and then paid its employees 50% of the total amount billed. (*Id.*)

Below is a basic chart which identifies the names and certain basic information regarding each class member.

| NAME | POSITION | PROJECT | CORE |
|------|----------|---------|------|
| 1. *Jeffrey Archer | *Plaintiffs' Contention:* Invoice Reviewer. *Defendant's Contention:* Invoice Reviewer and Adjuster. (Jeff Archer Dep. at 170, 188). | Exxon Valdez (Valdez and Anchorage locations) | No |
| 2. *Joe Archer | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* Monitor and Invoice Reviewer (Joe Archer Dep. 86–88, 107, 110–11). | Ashland (Pittsburgh); Exxon Valdez (Seward and Valdez locations) | No |

1. The law of the case doctrine applies where " ... one judge or court [adheres] to the rulings of another judge or court in the same case or closely related cases...." *Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.,* No. Civ. A. 91–1630, 1999 WL 680185, at *34 (W.D.Pa. July 21, 1999). To maintain consistency and avoid unnecessary reconsideration of certain information, the court will follow the pertinent findings made in *Sonnier* and *Brock.*

| NAME | POSITION | PROJECT | CORE |
|---|---|---|---|
| 3. *Larry Bain | Adjuster. (Bain Dep. 32). | Exxon Valdez (Valdez and Homer locations) | No |
| 4. *William Beecher | *Plaintiffs' Contention:* Adjuster.<br><br>*Defendant's Contention:* Adjuster and Adjuster Supervisor. (Beecher Dep. at 43). | Exxon Valdez (Valdez, Anchorage, Homer and Kenai locations) | Yes after April 1990. |
| 5. *Kenneth Bitner | *Plaintiffs' Contention:* Adjuster.<br><br>*Defendant's Contention:* Adjuster and Team Leader/Supervisor. (Bitner Dep. 69–70, 74–75). | Exxon Valdez (Anchorage and Seattle locations) | Yes |
| 6. *Doug Branham | *Plaintiffs' Contention:* Monitor and Quality Control Supervisor.<br><br>*Defendant's Contention:* Monitor, Invoice Reviewer, Adjuster and Quality Control Supervisor. (Branham Dep. 92, 98, 106, 122). | Ashland (Pittsburgh and Stuebenville locations); Exxon Valdez (every location as a Quality Control Supervisor) | No |
| 7. *Harold Butler | Adjuster. (Butler Dep. 103). | Exxon Valdez (Anchorage, Kodiak and Homer locations) | No |
| 8. *Joseph Byrd | *Plaintiffs' Contention:* Monitor.<br><br>*Defendant's Contention:* Monitor and Invoice Reviewer (Byrd Dep. 33, 44–46). | Exxon Valdez (Valdez and Anchorage locations) | No |
| 9. *James Carter | *Plaintiffs' Contention:* Adjuster.<br><br>*Defendant's Contention:* Adjuster and Monitor (Carter Dep. at 35, 85–88). | Exxon Valdez (Valdez and Kodiak locations) | No |
| 10. Kelvin Carter | *Plaintiffs' Contention:* Monitor.<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez<br>*Defendant's Contention:* No evidence; not deposed. | Non–Core<br><br>*Defendant's Contention:* No evidence; not deposed. |
| 11. Terry Childers | *Plaintiffs' Contention:* Monitor. | *Plaintiffs' Contention:* Exxon Valdez | *Plaintiffs' Contention:* No |

| NAME | POSITION | PROJECT | CORE |
|---|---|---|---|
| | *Defendant's Contention:* No evidence; not deposed. | *Defendant's Contention:* No evidence; not deposed. | *Defendant's Contention:* No evidence; not deposed. |
| 12. Frank Claunch | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed (*see* Motion to Strike Deposition of Frank Claunch.) | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed (see Motion to Strike). | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed (see Motion to Strike). |
| 13. *Charles Cunningham | Adjuster. (Cunningham Dep. 31–34). | Exxon Valdez (Anchorage location) | No |
| 14. *Dennis Diehl | Monitor. (Diehl Dep. 67, 90, 91). | Exxon Valdez (Valdez and Seward locations) | No |
| 15. Lawrence Eason | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 16. *Silton Fuselier | Monitor. (Fuselier Dep. 38–42). | Exxon Valdez (Cordova and Valdez locations) | No |
| 17. Sam Mickey Galloway | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 18. Raymond Scott Gammage | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 19. Ronald Glass | *Plaintiffs' Contention:* Adjuster and Invoice Reviewer. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 20. Bryan Graves | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 21. Edwin Graves | *Plaintiffs' Contention:* Adjuster and Supervisor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Yes *Defendant's Contention:* No evidence; not deposed. |
| 22. William Hales | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez | *Plaintiffs' Contention:* Yes *Defendant's Contention:* No evidence; not deposed. |
| 23. *James Hargrove | *Plaintiffs' Contention:* Claims Supervisor. | *Plaintiffs' Contention:* Ashland | Yes |

| NAME | POSITION | PROJECT | CORE |
|---|---|---|---|
| | *Defendant's Contention:* Claims Supervisor and Office Administrator (Hargrove Dep. 179–82). | *Defendant's Contention:* Hargrove is pursuing claims for Norco, Louisiana Project; Pasadena Texas Project; Buckeye Pipeline Project; Dupont Project; St. Louis, Missouri Project (1993); and North Ridge Earthquake Project and Ashland. (Hargrove Dep. 206–16, 222–25, 227–28, 240–44, 263–66, 270–75.) | |
| 24. *David Harpole | Monitor (Harpole Dep. 108–09). | Exxon Valdez (Artic Salvor, Valdez, EB2 barge, Anchorage and Whittier locations) | No |
| 25. *Lloyd Hebert | Adjuster (69–72). | Exxon Valdez (Anchorage, Cordova, Homer and Seward locations) | No |
| 26. Randal Hensley | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 27. Jacquez Hewlett | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 28. *John Howard | *Plaintiffs' Contention:* Adjuster.<br><br>*Defendant's Contention:* John Howard is deceased. Defendant deposed Howard's spouse who had no knowledge of his duties. Other Plaintiffs have testified that Howard was an Adjuster. (Williams Dep. 146–47). | Ashland (Pittsburgh, PA and Stuebenville, Ohio locations) | Yes |
| 29. Wayne Hutsell | *Plaintiffs' Contention:* Monitor, Adjuster and Invoice Reviewer. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez<br><br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No<br><br>*Defendant's Contention:* No evidence; not deposed. |
| 30. Gary Imboden | *Plaintiffs' Contention:* Adjuster. | *Plaintiffs' Contention:* Exxon Valdez | *Plaintiffs' Contention:* No |

| NAME | POSITION | PROJECT | CORE |
|---|---|---|---|
| | *Defendant's Contention:* No evidence; not deposed. | *Defendant's Contention:* No evidence; not deposed. | *Defendant's Contention:* No evidence; not deposed. |
| 31. *David Irons | Adjuster. (Irons Dep. at 50). | Exxon Valdez (Valdez location) | No |
| 32. *Jon Kallenberger | *Plaintiffs' Contention:* Monitor.<br><br>*Defendant's Contention:* Monitor and Inventory Control Specialist (Kallenberger Dep. 53, 60.) | Exxon Valdez (worked on barges, EB2) | No |
| 33. Gordon Ames Keller | *Plaintiffs' Contention:* Adjuster.<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No<br>*Defendant's Contention:* No evidence; not deposed. |
| 34. Jimmy King | *Plaintiffs' Contention:* Adjuster.<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No<br>*Defendant's Contention:* No evidence; not deposed. |
| 35. Floyd King | *Plaintiffs' Contention:* Monitor and Monitor Supervisor.<br><br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Ashland and Exxon Valdez Projects<br><br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Yes<br><br>*Defendant's Contention:* No evidence; not deposed. |
| 36. Donald Lamb | *Plaintiffs' Contention:* Adjuster.<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No<br>*Defendant's Contention:* No evidence; not deposed. |
| 37. *Jerry Loudin | *Plaintiffs' Contention:* Monitor.<br><br>*Defendant's Contention:* Monitor, Monitor Supervisor, Inventory Control Specialist and Inventory Control Specialist Supervisor (Loudin Dep. 72, 86–88, 99, 102–03). | Exxon Valdez (Valdez location and various barges) | No |
| 38. Thomas Mannering | *Plaintiffs' Contention:* Adjuster.<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez<br>*Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No<br>*Defendant's Contention:* No evidence; not deposed. |
| 39. *Robert Marquardt | *Plaintiffs' Contention:* Adjuster.<br><br>*Defendant's Contention:* Adjuster and | Exxon Valdez (Valdez, Anchorage and Kodiak, AK and Houston, TX locations) | No |

| | NAME | POSITION | PROJECT | CORE |
|---|---|---|---|---|
| | | Researcher (Marquardt Dep. at 65, 68, 74–75). | | |
| 40. | *Ron Matthews | Adjuster (Matthews Dep. at 88–9). | Ashland (Pittsburgh location) | Yes |
| 41. | Joseph McGann | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 42. | *George McGhee | Invoice Reviewer (McGhee Dep. 50, 59). | Exxon Valdez (Valdez and Anchorage locations). | No |
| 43. | Richard Merrill | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 44. | *Walter Moore | *Plaintiffs' Contention:* Monitor and Adjuster. *Defendant's Contention:* Monitor, Adjuster and Supervisor. (Moore Dep. at 115, 129, 141, 148). | Exxon Valdez (Valdez, Cordova locations and on barges) | Yes |
| 45. | *Jan Morris | *Plaintiffs' Contention:* Monitor, Monitor Supervisor and Adjuster. *Defendant's Contention:* Monitor, Monitor Supervisor, Adjuster and Asset Disposal Team (Morris Dep. 81–5, 93). | Exxon Valdez (Homer, Cordova, Anchorage locations and on barges) | No |
| 46. | *Porter Moss | *Plaintiffs' Contention:* Supervisor and Adjuster. *Defendant's Contention:* Nighttime Supervisor for data entry and report generation group, Adjuster, Adjuster Supervisor, and other miscellaneous duties as outlined in Crawford's Motion to Decertify (Moss Dep. 122–41, 148–50, 184–89, 192–98, 223–25, 239, 257–58). | Ashland (Pittsburgh, PA and Stuebenville, Ohio locations); Exxon Valdez (Valdez and Anchorage, AK, Seattle, Washington and Houston, Texas locations) | Yes |

| NAME | POSITION | PROJECT | CORE |
|---|---|---|---|
| 47. *Tom Nort | Adjuster. (Nort Dep. 79). | Exxon Valdez (Valdez and Anchorage locations) | No |
| 48. Barry Parks | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 49. John Pryor | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Ashland and Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 50. Donald Reid | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 51. Lewis Robinson | *Plaintiffs' Contention:* Invoice Reviewer and Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 52. *Duron Scoby | Adjuster. (Scoby Dep. at 125). | Ashland (Pittsburgh location) | No |
| 53. Harold Shreves | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 54. Walt Shupe | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 55. Thomas Siegwald | *Plaintiffs' Contention:* Adjuster and Invoice Reviewer. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 56. Larry Smith | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 57. *Sherman Sonnier | *Plaintiffs' Contention:* Invoice Reviewer. *Defendant's Contention:* Invoice Reviewer and Monitor (Sonnier Dep. 56, 84). | Exxon Valdez (Valdez location) | No |
| 58. Jack Stewart | *Plaintiffs' Contention:* Monitor. | *Plaintiffs' Contention:* Exxon Valdez | *Plaintiffs' Contention:* No |

| NAME | POSITION | PROJECT | CORE |
|------|----------|---------|------|
| | *Defendant's Contention:* No evidence; not deposed. | *Defendant's Contention:* No evidence; not deposed. | *Defendant's Contention:* No evidence; not deposed. |
| 59. Barbara Straham | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. Plaintiff deceased. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. Plaintiff deceased. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. Plaintiff deceased. |
| 60. *Lanny Swarthout | Monitor. (Swarthout Dep. 176). | Ashland (Pittsburgh location) | Yes |
| 61. *David Tucker | *Plaintiffs' Contention:* Monitor Supervisor. *Defendant's Contention:* Monitor and Monitor Supervisor (Tucker Dep. at 82–83, 97). | Exxon Valdez (Valdez location) | Yes |
| 62. Thomas Villers, Sr. | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 63. Thomas Villers, Jr. | *Plaintiffs' Contention:* Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 64. Arley Wassom | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 65. *Charles Welch | Adjuster and Monitor. (Welch Dep. at 145, 188). | Exxon Valdez (Valdez, Anchorage and Kodiak locations) | No |
| 66. Michael White | *Plaintiffs' Contention:* Invoice Reviewer and Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 67. Paddi White | *Plaintiffs' Contention:* Invoice Reviewer. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 68. *Mike Williams | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* Adjuster and Adjuster Supervisor. (Williams Dep. 136–37). | Ashland (Pittsburgh, PA and Stuebenville, Ohio locations) | Yes |

| NAME | POSITION | PROJECT | CORE |
|------|----------|---------|------|
| 69. Matthew Williamson | *Plaintiffs' Contention:* Adjuster and Monitor. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Ashland and Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* No *Defendant's Contention:* No evidence; not deposed. |
| 70. Dale Wilson | *Plaintiffs' Contention:* Adjuster. *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Exxon Valdez *Defendant's Contention:* No evidence; not deposed. | *Plaintiffs' Contention:* Yes *Defendant's Contention:* No evidence; not deposed. |
| 71. *Charles Yawn, Jr. | Monitor. (Yawn Dep. at 71). | Exxon Valdez (Valdez, Seward and Cordova locations and various boats and barges) | No |

* denotes Plaintiff has been deposed in presence of counsel for all parties.

### C. Legal Standard

Section 216(b) of the FLSA provides in pertinent part:

> An action to recover may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C.A. § 216(b).

Although the FLSA does not define the term 'similarly situated', courts generally do not require prospective class members to be identical. *See generally, Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 567 (1995); *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1212 (5th Cir.1995); *Bunnion v. Consolidated Rail Corporation,* Civ. A. No. 97–4877, 1998 WL 372644, at * 17 (E.D.Pa. May 14, 1998). Under the line of cases established by *Lusardi* the court resolves the similarly situated issue on an "ad hoc" basis by applying a two step analysis.[2] *Mooney,* 54 F.3d at 1213. During the first or "notice stage", the court examines pleadings and affidavits in the record to determine whether notice should be given to potential class members. *Brooks,* 164 F.R.D. at 568 (*quoting Mooney,* 54 F.3d at 1213–14). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney,* 54 F.3d at 1214.

■ Once discovery is complete and more factual information is available to the court, the defendant may file a motion to decertify the class. *Id.* At this juncture, the court uses a higher standard to analyze the similarly situated issue. *Thiessen v. General Electric Capital Corporation,* 996 F.Supp. 1071, 1080 (D.Kan.1998), *class decertified in Thiessen v. General Electric Capital Corporation,* 13 F.Supp.2d 1131 (D. Kan.1998). Generally, district courts have applied three factors in the second or post discovery stage to determine whether opt-in plaintiffs are "similarly situated":

> (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.

*Thiessen,* 996 F.Supp. at 1080.

The first factor assesses the opt-in plaintiffs' job duties, geographic location, supervision and salary. *Thiessen,* 996 F.Supp. at 1081; *Lusardi,* 118 F.R.D. at 358–59; *Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 569 (N.D.Al.1995). Generally, allegations of an "overarching" policy are insufficient, and plaintiffs are required to produce " 'substantial evidence' " of a " 'sin-

---

**2.** The full citation for *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987) is given on page 400.

gle decision, policy or plan' ". *Thiessen,* 996 F.Supp. at 1081 (*citing Brooks,* 164 F.R.D. at 566.)

The second factor raises the issue of whether the potential defenses pertain to the opt-in class as a whole or whether many different defenses will be raised with respect to each individual opt-in plaintiff. *Thiessen,* 996 F.Supp. at 1083. Because individualized defenses prevent an efficient proceeding with a representative class, several courts have granted motions for decertification on this basis. *See Thiessen,* 996 F.Supp. at 1083; *Lusardi,* 118 F.R.D. at 370; *Brooks,* 164 F.R.D. at 569; and *Bayles v. American Medical Response of Colorado,* 950 F.Supp. 1053, 1067 (D. Colo.1996). However, the district court has the discretion to determine whether the potential defenses would make the class unmanageable. *Lockhart,* 879 F.2d at 52.

Finally, the fairness and procedural factors direct the court to consider whether it can analyze the opt-in class with a "broad scale approach." *Lusardi,* 118 F.R.D. at 360. The court should consider that the primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The court must also determine whether it can coherently manage the class in a manner that will not prejudice any party. *Thiessen,* 996 F.Supp. at 1084.

### D. Discussion

■ Crawford has devoted much attention to differences in the name and opt-in plaintiffs' job duties, geographic assignments and hourly billing rates. Irrespective of these differences, each of the plaintiffs assert a common claim; i.e., that Crawford violated the FLSA by failing to compensate with them overtime wages for their work during the Ashland and the Exxon Valdez oil spill projects. Their assertions are supported by the opinions in *Sonnier* and *Brock* which establish that Crawford's CAT employees did

not receive overtime compensation. Also, variations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective basis of the class to the extent that it defeats the primary objectives of a § 216(b) action. Finally, the fact that Hargrove's initial Complaint sought overtime wages for daily and hourly projects does not significantly separate his claims from those of the opt-in class.

■ Next, Crawford has alerted the court that it will raise an exemption defense and a statute of limitations defense for each opt-in plaintiff. As to the exemption defense, the FLSA does not require employers to pay overtime wages to employees who are "employed in a bona fide executive, administrative or professional capacity." 29 U.S.C.A. § 213(a)(1). The court also acknowledges Crawford's intention to examine each opt-in plaintiff's background and personal knowledge of the FLSA in support of their statute of limitations defense. However, after careful deliberation, the court concludes that neither defense would make the opt-in class unmanageable.

First, administrative or supervisory status may be ascertained by applying either the long or the short test. *Devlin v. City of Philadelphia,* No. Civ. A. 92–3214, 1993 WL 246095 *1, (E.D.Pa. June 30, 1993). The short test applies when an employee earns a salary of at least $250.00 or more per week. *Devlin,* 1993 WL 246095 at *1; *Gusdonovich v. Business Information Company,* 705 F.Supp. 262, 265 (W.D.Pa.1985.) If, as Crawford asserts, the majority of the plaintiffs received more than $250.00 per week for their work during the Ashland and the Exxon Valdez oil spills, than the exemption issue will be resolved under the short test by examining the plaintiffs' duties. *See Gusdonovich,* 705 F.Supp. at 265. The opt-in plaintiffs here worked primarily as monitors, adjusters, invoice reviewers and supervisors. Based upon the evidence presented to the court and the specific nature of the work performed by the CAT division, the duties of one opt-in plaintiff can not be substantially distinct from those of another opt-in plaintiff who worked in the same position. Therefore, the court will be able to coordinate the ex-

emption issue by ascertaining the duties of each respective position.

With regard to the statute of limitations defense, the court's prior opinions permit Crawford to present evidence regarding each opt-in plaintiff's personal knowledge of the FLSA. However, the statute of limitations will not be a particular defense raised against a specific plaintiff; rather it will be asserted against every member of the class. Decertification would require the court to perform the statute of limitations analysis in over seventy separate lawsuits and would be an inefficient use of this court's limited time. Accordingly, the effective case management and practicality considerations of the third factor favor resolving the statute of limitations issue for each plaintiff in a single class action lawsuit.

### E. Conclusion

The differences in the plaintiffs' job duties, geographic locations and hourly billing rates do not destroy their collective claim for overtime wages under the FLSA. Additionally, only two common defenses rather than a series of individual defenses will be raised against each plaintiff. That fact weighs in favor of one class lawsuit rather than seventy separate actions. Finally, a class action would be a more effective use of the court's resources. Accordingly, the court will deny Crawford's Motion to Decertify filed at document number two hundred and twelve.